WILLIAM EPSTEIN

*v.*

STATE OF TENNESSEE.

366 S.W.2d 914.

(*Nashville*, December Term, 1962.)

Opinion filed April 3, 1963.

Rehearing Denied April 30, 1963.

Lucius Burch, Jr., and W. J. Michael Cody, Memphis, for plaintiff in error, Burch, Porter & Johnson, Memphis, of counsel.

George F. McCanless, Attorney General, Lyle Reid, Assistant Attorney General, Nashville, for the State.

Jake Green, Memphis, for amicus curiae.

636

MR. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

Epstein was indicted along with others in a three count indictment charging (1) larceny (this count was abandoned by the State); (2) violation of sec. 39-4220, T.C.A., bringing stolen property into the State; and (3) violation of sec. 39-4219, T.C.A., receiving property stolen out of the State. Epstein was likewise indicted in a separate indictment charging the violation of sec. 45-2216, T.C.A., which makes it unlawful for a pawnbroker to purchase personal property in conducting a pawnbroking business. The trial of Epstein was conducted on the two indictments together, because all the facts grew out of the same incidents. The jury acquitted Epstein of the two counts in the felony indictments and convicted him of the violation of the pawnbroker's act and he was fined the maximum under the statute, sec. 45-2219, T.C.A., of $500.00. It is from this conviction that this appeal has been perfected. Very fine briefs and able arguments have been heard with numerous questions presented. After considerable study of the record, briefs and authorities we are now in a position to decide the case.

As far as the felony indictment is concerned it is not necessary for us to go into the questions there presented other than to determine, as we will hereinafter, whether

or not the trial of the felony indictment along with the misdemeanor indictment was an abuse of discretion on the part of the trial judge, a motion having been made for separate trials on each.

█ The indictment herein charged Epstein with the violation of sec. 45-2216, T.C.A., in that on August 17, 1961, ''being a pawnbroker, and, in the conduct of his said business as a pawnbroker, did unlawfully purchase and buy from one Orville Fires, alias Orville Champion alias Orville Fiers alias Orville Hayden certain personal property, to-wit, shotguns and rifles.'' This is a proper indictment under this statute.

The statute, sec. 45-2216, T.C.A., is in the following words:

''No pawnbroker, loan broker, or keeper of a loan office shall, *in the conduct of said business, under any pretense whatever,* purchase or buy any personal property whatsoever.'' (Emphasis supplied.)

''The law as the trade construed it was that they could purchase merchandise for resale from dealers and traders, but that they could not purchase the personal property of an individual. This construction of the statute was consistent and uniform in the trade.'' (Plaintiff in error's brief, page 20). This, of course, is the obvious meaning of the statute, and on this meaning under the charge of the court, as hereinafter referred to, this conviction was had.

█ In 1937 the Legislature enacted the Pawnbroker Act for the purpose of permitting pawnbrokers to obtain a license to make loans, etc., under certain provisions as set forth in this Act, which is now codified in

sec. 45-2202, T.C.A., through sec. 45-2220, T.C.A. This Act, and the various Sections thereof, contain many provisions regulating the pawnbroker trade. One of these provisions is as copied above, sec. 45-2216, T.C.A. The Act remained as it was enacted in 1937 until 1949 when sec. 17 of the Act, which was codified then in Williams' Code as sec 6750.16, was stricken. This Section which was stricken prohibited a pawnbroker from carrying on any other business except that of pawnbroking in the building, or the building adjoining that, in which he was licensed to conduct a pawn shop. Consequently, pawnbrokers had other buildings nearby, across the street or somewhere, wherein they conducted a mercantile business, buying from legitimate dealers and selling to the public. The Legislature in 1949 struck this Section, and after this Section was stricken the pawnbroker could conduct a mercantile business in the same building in which he had a pawn shop. The striking of this Section and allowing them to have a mercantile business in the same building in which they had a pawn shop did not in any way affect the restriction which was originally put on the pawnbrokers as is quoted above in sec. 45-2216, T.C.A. In other words the Legislature hasn't changed any restriction on the pawnbroker as such, even though a pawnbroker may operate a legitimate mercantile business in the same place his pawn shop is located. This statute when studied and reasonably construed means exactly what the trade and the police department had thought it meant and what the court charged the jury that it meant in this case, that is, that pawnbrokers could not purchase personal property from an individual, but they could purchase merchandise for resale from dealers and traders. There are many obvious reasons why the Legislature in

their right under the police powers of this State might pass such a restriction on a pawnbroker. In the first place when a person comes in to pawn something if it were permissible for the pawnbroker to purchase the article from the person there he would get it for a little of nothing, because obviously when a man or woman goes to a pawnbroking shop they are in a desperate situation and in need of money. In the Act as drawn a person, who is in this situation and borrows this money, is protected under the Act through all kind of restrictions so that when they improve their position they can get the article back at a reasonable rate of interest. This reason alone would be sufficient for the Legislature to enact such an Act as sec. 45-2216, T.C.A., supra.

"The business of pawnbrokers, because of the facility it furnishes for the commission of crime for its concealment, is one which clearly comes within the control of the police power of the state and is properly subject to regulation for the benefit of the public and to prevent frauds upon it, and it is unlawful if not conducted under the provisions, restrictions, and requirements of the law. The business is a privilege, not a right, and he who avails himself of it and derives its benefits must bear its burdens and conform to the laws in force regulating the occupation, if it is not illegal * * *. It is not necessary that laws for the regulation of pawnbrokers apply equally and uniformly to all citizens in order to be constitutional. It is sufficient if they apply equally and uniformly to all who are similarly circumstanced, and if they are not otherwise objectionable." 40 Am.Jur., page 691, sec. 4.

■■ Of course, statutes of the kind here in question are penal in nature and are to be strictly construed. It

has been decided by every state in which we can find that the question has arisen that the Legislature may within the general scope of its police power control and regulate the business or occupation of pawnbrokers. See *Solof v. City of Chattanooga,* 180 Tenn. 296, 174 S.W.2d 471, 176 S.W.2d 816, and other cases there cited, which may be found by looking in American Jurisprudence, supra, or in 70 C.J.S. Pawnbrokers, page 186, et seq.

▪▪ The apparent reason for the briefs filed on behalf of all other pawnbrokers in Memphis was the fact there was some feeling that because of the trial court's charge to the jury and the definition of personal property all these pawnbrokers might be subject to indictment under this Act while acting as a merchant. This is what we assume was the reason for their entering because they say they have no particular interest one way or the other in the fine of the plaintiff in error here. Be that as it may, the plaintiff in error as well as these *amicus curiae* make a very convincing argument that by reason of the provisions of sec. 45-2216, T.C.A., prohibiting the purchase of any personal property that this statute is unconstitutional and in direct violation of Section 8 of Article 11 of our Constitution and the Fourteenth Amendment to the Constitution of the United States. This argument is based around the fact that under the charge to the jury defining all personal property—the definition is a good definition of what personal property is—this in effect is prohibiting a pawnbroker from buying any personal property at all even down to mops and things of that kind that are used in the running of his business. Of course, if this Act had that meaning there would be much substance in this argument. As we read it upon a careful study of the matter, the Act does not have that

meaning. We have underscored in our copying of the statute in question the determinative heart of the statute, to-wit, "in the conduct of said business, under any pretense whatever, * * *." Clearly this part of the statute refers to the pawnbroker in the business of pawnbroking and to nothing else. In other words, it means within the bounds or limit of pawnbroking and nothing else, just as this record shows that the trade and police department had accepted, and as the charge to the jury herein fixes the meaning of this statute. It is presumed that the Legislature in enacting this statute did not intend an absurdity, and such a result will be avoided if the terms of the statute admit of it by a reasonable construction. To say that under the terms of the Act a pawnbroker in the pawnbroking business could not buy the mops and light bulbs and those few necessities for his place of business is reducing the matter almost to an absurdity. Of course, in good advocacy this is bringing their argument to a very glaring focal point, but clearly under the terms of this Act the Legislature never intended any such absurdity.

The charge of the court obviously is rather long involving the felony case as well as this misdemeanor case. In reference to this indictment under which this conviction was had, the court starts out by telling the jury that there is another separate indictment, by number, based on the statute and then reading the statute setting out the penalty if it was violated; then in regard to his indictment under this statute the court said:

"* * * it is the theory of the defendant that he purchased the guns as a merchant for re-sale and did not acquire them in connection with his business as a pawnbroker, that he had a license granting him the

privilege of doing business as a merchant and that he had the right to buy and sell merchandise.

"If you believe that this theory is sustained by the evidence or if you have a reasonable doubt as to its truth, you must acquit the defendant of the offense charged in Indictment 90231."

Further in the charge as to this indictment in which the guilt has here been fixed by the finding of the jury the court said:

"* * * You will inquire then as to the guilt of the defendant in the offense charged against him in Indictment No. 90231, and if you find him guilty of the offense as charged in this indictment, beyond a reasonable doubt, your verdict then should read: * * *"

■ This is a well worded charge to the jury of the two offenses of the felony and the misdemeanor and the things under each clearly pointed out to the jury where they could make no mistake. The jury, as we said in the outset, acquitted on the felony part, but under the record, which showed an understanding of the trade that it was contrary to law for one as a pawnbroker to purchase personal property in this way, they found him guilty of violation of this statute. Apparently since they fixed his fine at the maximum they found no mitigating circumstances under the state of facts which we will briefly hereinafter review.

■ We find nothing in this record to indicate that the jury was basing their verdict on the proposition that this man was guilty of this offense for just any purchase he made. Of course, there are statements made by the Assistant District Attorney General and counsel in arguments

for various motions before the court that this prevented the pawnbroker from buying any personal property whatsoever, but such a statement under the indictment, charge of the court and this record of what the pawnbrokers understood the Act to mean, and the court telling the jury that if this purchase was made not as a pawnbroker but as a merchant he would not be guilty and if they had any doubt about it, he would not be. So as we see it there is no prejudice herein. When it comes to the point this Act means that it is to prohibit the pawnbroker from buying any personal property from those who come in to pawn their property for reasons that could be enumerated eventually at large. This is a reasonable regulation under the police powers of the State and such an Act is not unconstitutional.

▆▆ ▆▆ Under these constitutional attacks it is our duty to hold the statute constitutional if it is not purely arbitrary. *Motlow v. State,* 125 Tenn. 547, 145 S.W. 177, L.R.A.1916F, 177. We must assume too that the Legislature had before it in enacting this statute a state of facts which to them would give a reason for the passage of such a statute. The existence of the state of facts at the time this statute was enacted must be assumed. Thus it is, when one attacks the statute as here the burden is on them who attack to show that it is unreasonable and arbitrary.

▆▆ It seems to us that when this statute is deliberately read its provision is to keep the pawnbroker from buying personal property in any transaction which purports to be a pledge on or an exchange which in fact is a purchase. Of course, the practical aspect of this statute is that it discourages pawnbrokers from receiving or

buying personal property which might have been stolen, and it is not whether it is stolen or whether it isn't, but this is another means of preventing people who do steal from taking it to a pawnbroker and selling it for a little of nothing; when the pawnbroker can't purchase it, this will prevent such a practice to a certain extent. The Legislature could have had all this in its mind when it enacted this statute and presumptively they did.

The facts of this case, as developed herein, show that there were some $625.00 worth of stolen fire arms and that these were brought by a thief and sold to the plaintiff in error. The factual situation demonstrates the reason for the reasonableness of this statute.

After the plaintiff in error had purchased these fire arms he listed them in his normal pawnbroking daily report as pawned items with an identification card attached to each weapon indicating an amount loaned on the weapon rather than a purchase price. The thumb print of the person who sold the plaintiff in error these weapons was taken as required when property is pawned. Plaintiff in error held these weapons for the required time before placing them in stock to be sold in accordance with his understanding of what the law required him to do with pawned property. Of course, there is some conflict in the evidence as to what has just been said but the jury plainly and clearly under the material evidence could have believed this. All the records filed by the plaintiff in error indicated that the property was left as a pawn, and, of course, this is a question for the jury to determine whether or not this was received as a pawn or was a pretense used by the plaintiff in error. This was purely a fact question.

Briefly the record shows that one Orville Fires was caught burglarizing a shop in Montgomery County and in an automobile found there the police found a book containing the telephone number of the plaintiff in error's pawnshop. As a result of this there was an investigation made and it was found that through 1960 and 1961 the plaintiff in error had bought nearly three hundred shot guns and rifles from this thief, who purported to them to be a trader and dealer in watches, portable televisions, shotguns, etc. About the middle of August, 1961, a number of shotguns were stolen from a hardware store in Kentucky that had a retail value of $625.00. Three days later on August 17, 1961, the date on which this indictment was laid, these shotguns were delivered to the place of business of the plaintiff in error and were sold to him for $315.00.

According to the plaintiff in error's understanding of the statute and city ordinances regulating his business, he listed these articles that he purchased on the 17th on his pawnbroker daily report and made out an identification card and listed the amount under the amount loaned. The card also had on it a place for purchase price. He put on the card the sum of money he paid for these weapons and impressed the borrower's thumb print on them. These documents were required to be turned over to the police daily and they were, but plaintiff in error did not issue this fellow who sold him the shotguns a ticket with which to redeem the weapons received. According to the plaintiff in error's testimony of his understanding of the law regulating pawnshops these items were "held for forty-eight hours" after which they were "placed in stock with the other items and sold to other customers." There is other testimony in the record by others than

plaintiff in error that these transactions were reported as pawns and that the record which they gave the police daily showed that the weapons were pawns. The plaintiff in error admitted the procedure followed was different from that followed with other legitimate dealers; other dealers were not fingerprinted; merchandise they purchased from legitimate dealers was not listed on his records or those kept for the police department as pawned property; that all those items on the pawnbroker daily report except those purchased in the instance herein where he is charged with violating this statute actually were taken in pawn. Of course, the witness who testified to most of this attempted to explain it away by saying that "they were informed that this man was doing business with us (they were talking about the police department) and that he was a trader and we were buying from him." In other words, the defense was based on the proposition as shown by the charge above that this was a legitimate purchase, as he would purchase merchandise in his merchandising business and not done in violation of this statute. He admits he knew the police and trade understanding of the meaning of this statute (sec. 45-2216, T.C.A.) and yet he violated it under this record.

As heretofore said, in the beginning of this trial the plaintiff in error made a motion for separate trials under the felony indictment and under the misdemeanor indictment. This was overruled, and after reading this record we think properly so. This Court very recently has had a related question before it in *Hardin v. State*, 210 Tenn. 116, 355 S.W.2d 105. The rule of reason would be that if the facts out of which the two indictments grew are so closely interlocked and related that it would be necessary to introduce most of them in either case then clearly the

two transactions should be tried together. Thus it is that the rule, and a very salutary rule, has been adopted that if these different charges under these different indictments grow out of the same state of facts and are not repugnant or inconsistent they should be joined for trial even though one indictment charges a misdemeanor and the other a felony. This was long ago decided in *Tenpenny v. State,* 151 Tenn. 669, 270 S.W. 989, and most text writers on the subject agree with this proposition. The State quotes in support of their argument that there is no error here from Wharton's Criminal Law & Procedure, Vol. 5 sec. 1942, thus:

"Several indictments against the same defendant or defendants charging related offenses may be consolidated for the purpose of trial. It is immaterial that one of the offenses charged is a felony and the other a misdemeanor.

"Whether the indictments should be consolidated for trial is discretionary with the trial court. While consolidation will be refused when the defendant would be prejudiced thereby, his unsupported statement is insufficient to establish that joint trial of several charges would be prejudicial."

We do not think that the type of prejudice that plaintiff in error might have suffered in this case is such a type of prejudice or embarrassment that is contemplated by the rule referred to in the last paragraph of the quotation from Wharton above. Under the factual situation here most every fact could have been introduced in one trial or the other and, of course, some of these charges and some of this evidence was prejudicial, but it is only prejudicial to those who are charged with com-

mitting the crime that is charged. We do not think there is any prejudice here and that the trial judge could be put in error for not segregating these trials.

We have spent several days working on this case. Frankly, when oral argument was heard the writer was somewhat impressed with this argument made on behalf of the plaintiff in error, but after studying the record thoroughly, briefs and authorities, and for the reasons stated herein we have concluded that there is no error in this record. The man had a fair trial. The statute questioned does nothing more than prohibit a pawnbroker as such, not as a merchant, from purchasing any personal property from anyone coming and attempting to make a pawn. For reasons hereinbefore stated and others that could be thought about the Legislature was well within its police power in adopting such a statute, which is salutary in its purpose. We find no error in the record and the judgment below will be affirmed.

### On Petition to Rehear

Counsel for the plaintiff in error have filed herein a very forceful, respectful and able petition to rehear. We have read this petition twice and have re-read our original opinion.

This petition in essence is nothing more than a plea that this is ''an economic death sentence upon an old man,'' and that we should, so to speak, take the bull by the horns and grant him a new trial wherein he could be tried alone on the misdemeanor indictment. In our original opinion we said: ''He admits he knew the police and trade understanding of the meaning of this statute (sec. 45-2216, T.C.A.) and yet he violated it under this record.''

We carefully considered every question presented in this petition to rehear when we prepared our original opinion. After having fully considered the plea in this petition to rehear we are more satisfied than ever that if said petition were granted no case would ever reach finality. We are, too, more than ever satisfied that this petitioner had a fair trial in the original trial and that no injustice has been done him. There was clearly no abuse of discretion on the part of the trial court in trying these cases together.

Discretion, as here, means the trial judge exercised it, not arbitrarily nor wilfully, but with regard to what is right and fair under the circumstances of the law and directed by his reason and conscience to a just result.

After fully considering all questions raised and after having considered this matter in conference, we must deny the petition.