# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
July 10, 2012 Session

## WESTGATE RESORTS v. JAMES G. NEELEY, COMMISSIONER ET. AL.

**Appeal from the Chancery Court for Sevier County**
**No. 1011462    Hon. Telford E. Forgety, Jr., Judge**

---

**No. E2011-02538-COA-R3-CV - Filed August 3, 2012**

---

This is an unemployment compensation case. Cynthia L. Vukich-Daw filed a claim for unemployment compensation following her termination from Westgate Resorts. The claim was originally granted by the Tennessee Department of Labor and Workforce Development and subsequently upheld by the Appeals Tribunal and the Board of Review. Westgate Resorts filed a petition for judicial review, and the trial court reversed the Board of Review's decision, finding that Cynthia L. Vukich-Daw was ineligible to receive unemployment compensation benefits because she was a qualified real estate agent pursuant to Tennessee Code Annotated section 50-7-207. Cynthia L. Vukich-Daw and the Tennessee Department of Labor and Workforce Development appeal. We reverse the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Reversed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J, and D. MICHAEL SWINEY, J., joined.

Gregory F. Coleman and Mark E. Silvey, Knoxville, Tennessee, for the appellant, Cynthia L. Vukich-Daw.

Robert E. Cooper, Jr., Attorney General and Reporter, and Lindsey O. Appiah, Assistant Attorney General, General Civil Division, Nashville, Tennessee, for the appellee, Tennessee Department of Labor and Workforce Development.

Gregory C. Logue and J. Keith Coates, Jr., Knoxville, Tennessee, for the appellee, Westgate Resorts.

**OPINION**

**I. BACKGROUND**

In June 2003, Cynthia L. Vukich-Daw ("Claimant") was hired by Westgate Resorts ("WR") to sell time-shares in Tennessee. Claimant obtained the requisite license and signed numerous documents relating to her employment. One document, entitled Independent Contractor Agreement, provided that WR would not "control the mode, manner, or means by which [Claimant] perform[ed her duties]" but that she was required to "use certain approved marketing, advertising, and other sales materials and literature" when performing the services required of her. Another document, entitled Affidavit, declared, in pertinent part,

> I have not been required by the Broker to maintain any specific schedule or attend any mandatory sales meetings, nor am I required to follow special procedures.

> I may work as I see fi[t] or not work if I choose. I am not obligated to have set office or working hours.

> I may schedule vacations as I please and be off work as I see fit.

> I have not been required to meet any sales quotas.

> I have not received [any] minimum salary, sick pay or other fringe benefits.

> I do not receive instructions from the Broker as to which customers or property I am to sell.

> I pay my own income and FICA taxes.

> I am not required to file reports with the Broker concerning my business conduct or status of sale.

In contrast, Claimant was also given other documents informing her that she was to attend a three-week mandatory sales training, that she was to memorize WR's sales presentation "word for word," that she would be assigned "2 days off" during the week, that she could be "required" to work six days per week during the "peak season," and that she was to maintain a certain sales percentage or risk the loss of her position. She was also provided with a dress and grooming policy and an employee conduct policy, advising her that she could be

terminated for "frequent or unexcused absenteeism or lateness," working overtime without permission, and eating at times other than assigned meal periods. Pursuant to these documents, Claimant was paid a commission for each sale and $60 per day.

On November 7, 2009, WR terminated Claimant's employment. Five days later, she filed a claim for unemployment compensation with the Tennessee Department of Labor and Workforce Development ("the Agency"). The Agency determined that she was eligible for unemployment compensation, providing, in pertinent part,

> The tax auditor has determined [Claimant] was an employee and that the wages are reportable for unemployment insurance purposes. A [time-share] license is different than a regular real estate license because an individual cannot have both at the same time.

WR appealed the decision, arguing that Claimant was not entitled to unemployment compensation because she was an independent contractor. Following a hearing, the Appeals Tribunal made the following findings of fact:

> FINDINGS OF FACT: [Claimant's] most recent employment prior to filing this claim was with [WR] as a [time-share] salesperson. [WR] is engaged in the sale of [time-shares] to prospective purchasers. On June 4, 2003, [Claimant] entered into an Independent Contractor Agreement with [WR]. She was required to have a [time-share] salesperson license issued by the State of Tennessee in order to perform her job duties. [Claimant] received her license.
>
> [Claimant] was required to complete an employment application before she began work. She was hired by the trainer. [She] was required to comply with [WR's] policies and procedures. She could be disciplined for failure to comply. [WR] mandated the clothing [Claimant] wore and her grooming.
>
> [Claimant] received on-the-job training. She was required to memorize and cite a sales presentation. She received information to assist with making a sale. She was instructed to involve the sales manager if she was unable to close a sale.
>
> [WR] determined the days [Claimant] was scheduled to work. [She] was required to attend mandatory meetings. [She] was issued a company [time card] and an employee number. Prior to receiving a time card, she was required to sign in and out when she worked. [She] was required to complete

a form when she failed to sign out. [WR] corrected her time once the form was completed.

[Claimant] was paid a sixty dollar per day draw. She was paid in regular intervals. Her pay was directly deposited into her bank account. [She] was issued 1099s during her tenure. She was responsible for paying her own income and FICA taxes.

On November 17, 2009, the trainer presented [Claimant] with a letter of separation. [She] was advised that she was terminated as an employee of [WR]. She was separated because she was not meeting her sales quota. The separation was effective November 7, 2009.

In so finding, the Appeals Tribunal affirmed the Agency's decision.

WR appealed the decision to the Board of Review. The Board of Review adopted the Appeals Tribunal's findings of fact and conclusions of law but stated,

The Appeals Tribunal correctly held that [WR's] wages were reportable to and taxable by the Agency. [Claimant] was an employee of [WR]. The Appeals Tribunal correctly found that [WR] had almost complete control over [Claimant's] activities. [WR] did not satisfy the first prong of the "ABC" test in [Tennessee Code Annotated section 50-7-207(E)]. However, the Appeals Tribunal did not address the more vigorously contested issue, whether [Claimant] was in "excluded service" under subsection (c)(11), which excludes from Unemployment Insurance coverage "[s]ervice performed by a qualified real estate agent." The question is whether [Claimant], a [time-share] salesperson, was a "qualified real estate agent." She was licensed by the Tennessee Real Estate Commission – but only to sell [time-shares], not other categories of real estate. The requirements to obtain a [time-share] license are much less stringent than those for a full "real estate agent" license. The exclusions from coverage under the Unemployment Insurance Act should be construed narrowly in order to further the Act's purpose – compensating claimants for losing their jobs for reasons not within their control. The Agency was therefore correct in finding [Claimant] to be an employee of [WR].

In so finding, the Board of Review affirmed the decision of the Appeals Tribunal.

WR then filed a petition to rehear. The Board of Review denied the request, finding

-4-

[T]he Board specifically addressed the issue of whether [Claimant] was a "qualified real estate agent." [WR] now argues that the Board of Review failed to consider its argument that a [time-share] salesperson comes under the jurisdiction of the Tennessee Real Estate Commission and that a [time-share] license can be excluded by statute.

[WR] is correct that a [time-share] salesperson does come within the jurisdiction of the Tennessee Real Estate Commission and that a [time-share] license can be excluded by statute from the provision of the Employment Security Act. However, the answer to these questions is not dispositive of the real issue which is whether the General Assembly passed legislation exempting [time-share] salespersons from the provisions of the Employment Security Act. The issue is one of statutory construction. In general, a statute which is not ambiguous is to be construed based upon its plain language. Here the statute states that excluded service means

> 11) Service performed by a qualified real estate agent if:
>
> (A) The individual is a licensed real estate agent.

Based upon the plain language of the statute the question is whether the claimant is a "licensed real estate agent." The records before the Board of Review show[] that [Claimant] was licensed as a [time-share salesperson] not a "licensed real estate agent." The General Assembly is presumed to know the law when it enacts legislation and therefore would have understood that the licensing board has different categories of licensure. We must assume that since the General Assembly did not designate a [time-share salesperson] as exempt from the provisions of the Employment Security Law that i[t] did not intend to do so. [WR's] argument is found to be without merit.

WR appealed the Board of Review's decision to the trial court. The court held that Claimant was a qualified real estate agent because she

(1) was a licensed [time-share salesperson] as established by the Tennessee Real Estate Commission during the relevant time period;

(2) was paid on a commission basis directly related to her sales production and not on the number of hours she worked; and

(3) performed services for [WR] pursuant to a written contract which specifically stated that she was not [WR's] employee and that she would be responsible for paying all of her own Federal income taxes.

In so finding, the court reversed the Board of Review's decision that Claimant "did not perform excluded services for [WR] because she worked as a [time-share salesperson] and not a licensed real estate agent" because it was "contrary to [Tennessee Code Annotated section 50-7-207(c)(11)] and [Tennessee Code Annotated section 62-13-101] and, therefore, [wa]s clearly erroneous as a matter of law." This timely appeal followed.

## II. ISSUE

We consolidate and restate the issue raised on appeal as follows:

Whether there is substantial and material evidence in the administrative record, and a reasonable basis in law, to support the Board of Review's decision that Claimant was not disqualified from receiving unemployment compensation benefits pursuant to Tennessee Code Annotated section 50-7-207(c).

## III. STANDARD OF REVIEW

In an appeal from an agency decision concerning unemployment compensation, both the trial court and this court are obligated to apply the same standard. *Ford v. Traughber*, 813 S.W.2d 141, 144 (Tenn. Ct. App. 1991). The standard of review is set forth by Tennessee Code Annotated section 50-7-304(i)(2) and reads, in pertinent part,

(2) The chancellor may affirm the decision of the commissioner or the chancellor may reverse, remand or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(A) In violation of constitutional or statutory provisions;

(B) In excess of the statutory authority of the agency;

(C) Made upon unlawful procedure;

(D) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(E) Unsupported by evidence that is both substantial and material in the light of the entire record.

The statute directs that the court shall not substitute its "judgment for that of the commissioner's designee as to the weight of the evidence on questions of fact." Tenn. Code Ann. § 50-7-304(i)(3). The statute further provides that "[n]o decision of the commissioner's designee shall be reversed, remanded or modified . . . unless for errors that affect the merits of the final decision of the commissioner's designee." *Id.*

Substantial and material evidence is defined as "'such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration.'" *Sweet v. State Tech. Inst. at Memphis*, 617 S.W.2d 158, 161 (Tenn. Ct. App. 1981) (quoting *Pace v. Garbage Disposal Dist. of Washington Cnty.*, 390 S.W.2d 461, 463 (Tenn. Ct. App. 1965)). If the record contains such evidence, we must affirm the Board of Review's decision unless it is contrary to law. *Perryman v. Bible*, 653 S.W.2d 424, 429 (Tenn. Ct. App. 1983). The Board of Review's conclusions of law are subject to a de novo review with no presumption of correctness. *Wallace v. Sullivan*, 561 S.W.2d 452, 453 (Tenn. 1978).

## IV. DISCUSSION

The facts in this case are not in dispute. Accordingly, we must simply apply the law to those facts without affording the Board of Review's decision any presumption of correctness. *Id.* In order to be eligible for unemployment compensation, Claimant's service must be characterized as employment pursuant to the Tennessee Code, which provides,

(a) DEFINITION OF "EMPLOYMENT." For purposes of this chapter and subject to the special rules contained in subsection (e), and the definitions contained in subsection (f), "employment" means service that meets all of the following conditions:

(1) It is within any category of "included service" as listed in subsection (b);

(2) It is not within any category of "excluded service" as listed in subsection (c); and

(3) It is within any category of "Tennessee service" as listed in subsection (d).

Tenn. Code Ann. § 50-7-207(a). The parties agree that Claimant's service was within the categories of subsections (1) and (3). However, WR maintains that Claimant is not entitled to unemployment compensation because her service was within a category of an excluded service. The relevant category provides, in pertinent part,

> (c) "EXCLUDED SERVICE." For purposes of this section, "excluded service" means . . . :
>
> * * *
>
> (11) Service performed by a qualified real estate agent if:
>
> > (A) The individual is a licensed real estate agent;
> >
> > (B) Substantially all of the remuneration for the services performed as a real estate agent is directly related to sales or other output, including the performance of services, rather than the number of hours worked; and
> >
> > (C) The services performed by the individual are performed pursuant to a written contract between the individual and the person for whom the services are performed, and the contract provides that the individual will not be treated as an employee with respect to the services for federal tax (FUTA)[1] purposes[.]

Tenn. Code Ann. § 50-7-207(c)(11).

The parties agree that substantially all of Claimant's remuneration for her services was directly related to her sales and that she signed an agreement providing that she would not be treated as an employee with respect to the services for federal tax purposes. However, the parties disagree as to whether Claimant was a licensed real estate agent for purposes of the exclusion and whether subsection (C) applies when Claimant was actually treated as an employee. To resolve these issues our task is to interpret Tennessee Code Annotated section 50-7-207(c)(11). The Supreme Court of Tennessee has recapitulated the primary principles of statutory construction as follows:

---

[1] FUTA stands for the Federal Unemployment Tax Act.

[T]here are a number of principles of statutory construction, among which is the most basic rule of statutory construction: to ascertain and give effect to the intention and purpose of the legislature. However, the court must ascertain the intent without unduly restricting or expanding the statute's coverage beyond its intended scope. The legislative intent and purpose are to be ascertained primarily from the natural and ordinary meaning of the statutory language, without a forced or subtle interpretation that would limit or extend the statutes application.

*Mooney v. Sneed*, 30 S.W.3d 304, 306 (Tenn. 2000) (citations and internal quotation marks omitted).

This court is not permitted "to alter or amend a statute." *Gleaves v. Checker Cab Transit Corp., Inc.*, 15 S.W.3d 799, 803 (Tenn. 2000). "The reasonableness of a statute may not be questioned by a court, and a court may not substitute its own policy judgments for those of the legislature." *Mooney*, 30 S.W.3d at 306 (citing *Gleaves*, 15 S.W.3d at 803). "It is presumed that the Legislature in enacting [a] statute did not intend an absurdity, and such a result will be avoided if the terms of the statute admit of it by a reasonable construction." *Epstein v. State*, 366 S.W.2d 914, 918 (Tenn. 1963). "[C]ourts must 'presume that the legislature says in a statute what it means and means in a statute what it says there.'" *Gleaves*, 15 S.W.3d at 803 (quoting *BellSouth Telecomms., Inc. v. Greer*, 972 S.W.2d 663, 673 (Tenn. Ct. App. 1997)). Finally, "[t]he unemployment compensation statutes were enacted for the benefit of unemployed workmen and are to receive a liberal interpretation by the courts." *Weaver v. Wallace*, 565 S.W.2d 867, 869 (Tenn. 1978).

Relative to whether a time-share salesperson is a licensed real estate agent, neither the Tennessee Employment Security Law nor the Tennessee Real Estate Broker License Act ("TREBLA") define the term licensed real estate agent. TREBLA identifies several different types of agents with varying requirements and qualifications, namely a broker, an affiliate broker, a time-share salesperson, and an acquisition agent. Tenn. Code Ann. § 62-13-102. A time-share salesperson is defined as

any person acting as a seller of any time-share interval under contract with or control of a licensed real estate broker pursuant to a registered time-share program.

Tenn. Code Ann. § 62-13-102(15). Those desiring to become a time-share salesperson must submit an application accompanied by:

(1) The fees specified in § 62-13-308 for examination and license;

(2) Satisfactory proof that the applicant is:

   (A) At least eighteen (18) years of age; and

   (B) A resident of this state;

(3) A sworn statement that the broker with whom the applicant desires to be affiliated certifying that, in the broker's opinion, the applicant is honest and trustworthy and that the broker will *actively supervise and train* the applicant during the period the license remains in effect; and

(4) Certification, by the broker with whom the applicant desires to be affiliated, stating that the applicant has completed a thirty (30) hour training program consisting of instruction in the fundamentals of the Tennessee Time-Share Act[.]

Tenn. Code Ann. § 62-13-303(j) (emphasis added).

The requirements for obtaining and maintaining a time-share salesperson license are less onerous than the requirements for obtaining and maintaining a broker's license or an affiliate broker's license. *See generally* Tenn. Code Ann. § 62-13-303. Moreover, a time-share salesperson is limited in terms of employment because he or she must be in contract with or under the control of a broker. Tenn. Code Ann. § 62-13-102(15). The broker must also agree to actively supervise and train the time-share salesperson. Tenn. Code Ann. § 62-13-303(j)(3). It is these distinctions that we believe distinguish a licensed time-share salesperson from the licensed real estate agent mentioned in the exclusion. The two remaining requirements of the exclusion, remuneration based upon sales as opposed to hourly wages and a contract providing that the agent will not be treated as an employee, further support this distinguishment. When reading the real estate agent exclusion as a whole, it is apparent that the legislature intended to differentiate between an agent that was essentially a supervised employee and one that was an independent contractor with the freedom to work as he or she saw fit. The very definition of a licensed time-share salesperson belies any assertion that he or she is free to work without guidance. With these considerations in mind, we hold that a licensed time-share salesperson is not a licensed real estate agent for purposes of the exclusion. Having found that one of the three elements of the real estate exclusion is not present, we also hold that there was substantial and material evidence in the record and a reasonable basis in the law to support the Board of Review's decision that Claimant was not disqualified from receiving unemployment compensation.

In the event of further appellate review, we will also address whether subsection (C) applies when Claimant was actually treated as an employee. Overwhelming evidence was introduced concerning Claimant's status as an employee. WR does not argue that Claimant was not treated as an employee as the agreement declared. Instead, WR asks this court to ignore Claimant's actual status as an employee and focus upon the wording in the agreement, namely that she would not be treated as an employee for federal tax purposes. WR asserts that subsection (C) does not require that the service actually be performed pursuant to the terms of the agreement but merely requires the existence of a written agreement. We disagree. First, the interpretation WR suggests would run counter to the intent of the legislature in enacting the real estate agent exclusion, namely to exclude only those agents who operate without guidance or control. Second, subsection (C) provides,

> The services performed by the individual are performed pursuant to a written contract between the individual and the person for whom the services are performed, *and* the contract provides that the individual will not be treated as an employee with respect to the services for federal tax (FUTA) purposes[.]

Tenn. Code Ann. § 50-7-207(c)(11)(C) (emphasis added). The requirement that a contract is in existence providing that the individual will not be treated as an employee is secondary to the requirement that the services *are performed* pursuant to that contract. While one of the agreements in this case specifically provided that Claimant would not be treated as an employee, the services *actually* performed by Claimant were not performed pursuant to that agreement. The services were performed pursuant to other documents that Claimant was required to follow or risk termination. Accordingly, we conclude that the trial court erred in holding that subsection (C) was fulfilled by the wording of the agreement.

## V. CONCLUSION

The judgment of the trial court is reversed, and decision of the Board of Review holding that Claimant is entitled to unemployment compensation is hereby reinstated. The case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellee, Westgate Resorts.

_____
JOHN W. McCLARTY, JUDGE

-11-