# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
July 11, 2012 Session

## IN RE ESTATE OF OMER STIDHAM

**Appeal from the Chancery Court for Hamblen County**
**No. 2009P180     Hon. Thomas R. Frierson, II, Chancellor**

---

### No. E2011-02507-COA-R3-CV-FILED-AUGUST 23, 2012

---

The Bureau of TennCare filed a petition to appoint an administrator of Omer Stidham's estate in order to file a claim against the estate for medical assistance rendered. The court appointed an administrator, and the Bureau of TennCare filed its claim. The administrator found that the estate was insolvent but moved the court to determine whether real property held in a revocable trust could be used to satisfy the debts of the estate. The heirs objected, arguing that the claim was untimely and that the property could not be reached because it was held in a revocable trust. The court authorized the use of the property to satisfy the debts of the estate, finding that the claim was not untimely and that the revocable trust was subject to claims against the estate. The heirs appeal. We affirm the decision of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and NORMA MCGEE OGLE, SP. J.,[1] joined.

Alexander M. Taylor and Briton S. Collins, Knoxville, Tennessee, for the appellants, Karen A. Scott, Mary Jo White, Judy Wright, David Stidham, Suzanne E. Brooks, Rebecca Ball, and Terri Lane.

Robert E. Cooper, Jr., Attorney General and Reporter; William E. Young, Solicitor General; L. Vincent Williams, Deputy Attorney General; and Richard F. Clippard, Assistant Attorney General, General Civil Division, Nashville, Tennessee, for the appellee, Tennessee Bureau of TennCare.

---

[1] Judge on the Court of Criminal Appeals sitting by special designation.

# OPINION

## I. BACKGROUND

On October 27, 2008, Omer Stidham ("Decedent") died while a resident at Life Care Center in Morristown, Tennessee. Prior to his death, Decedent and his wife, who preceded him in death, owned real property that had been transferred into a revocable trust. Following his death, his heirs did not attempt to administer his estate because absent the property held in the trust, the estate was insolvent. On November 4, 2009, the Bureau of TennCare ("the Bureau") filed a petition to appoint an administrator of the estate, alleging that Decedent had received TennCare services and that it was entitled to reimbursement from the estate for those services.

The court appointed Scott Hodge ("Administrator") as the administrator of the estate, and the Bureau filed a claim in the amount of $87,295.97. Administrator found that the estate was insolvent because Decedent's only known asset was the real property held in the revocable trust. Administrator requested a hearing to determine whether the real property could be brought into the estate for the purpose of paying the estate's debts. The heirs objected, arguing that the Bureau's claim against the estate was time-barred and that the Bureau could not access the property because the revocable trust was not part of the estate. The Bureau asserted that the claim was not time-barred because it did not receive notice of Decedent's death as required and that property held in a revocable trust should not be held inaccessible from proceedings to satisfy just debts. Following a hearing, the court denied the objections submitted by the heirs, holding that the claim was not barred by Tennessee Code Annotated section 30-2-310 and that Administrator could use the real property located in the revocable trust for the purpose of satisfying the Bureau's claim against the estate. The heirs filed a timely appeal.

## II. ISSUES

We consolidate and restate the issues raised on appeal as follows:

A. Whether the statute of limitations precluded the Bureau's claim for the recovery of justly paid medical benefits.

B. Whether the Bureau may use assets held in a revocable trust to satisfy a claim against an estate for medical benefits.

C. Whether allowing the Bureau to recover assets in similar claims places an unintended and unlawful obligation upon the trustees of revocable trusts.

## III. STANDARD OF REVIEW

The facts are not in dispute, and the issues before this court involve the interpretation of statutes and case law. "Statutory construction is a question of law that is reviewable on a de novo basis without any presumption of correctness." *In re Estate of Tanner*, 295 S.W.3d 610, 613 (Tenn. 2009). Likewise, the trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

The Supreme Court of Tennessee has recapitulated the primary principles of statutory construction as follows:

> [T]here are a number of principles of statutory construction, among which is the most basic rule of statutory construction: to ascertain and give effect to the intention and purpose of the legislature. However, the court must ascertain the intent without unduly restricting or expanding the statute's coverage beyond its intended scope. The legislative intent and purpose are to be ascertained primarily from the natural and ordinary meaning of the statutory language, without a forced or subtle interpretation that would limit or extend the statute's application.

*Mooney v. Sneed*, 30 S.W.3d 304, 306 (Tenn. 2000) (citations and internal quotation marks omitted). This court is not permitted "to alter or amend a statute." *Gleaves v. Checker Cab Transit Corp., Inc.*, 15 S.W.3d 799, 803 (Tenn. 2000). "The reasonableness of a statute may not be questioned by a court, and a court may not substitute its own policy judgments for those of the legislature." *Mooney*, 30 S.W.3d at 306 (citing *Gleaves*, 15 S.W.3d at 803). "It is presumed that the Legislature in enacting [a] statute did not intend an absurdity, and such a result will be avoided if the terms of the statute admit of it by a reasonable construction." *Epstein v. State*, 366 S.W.2d 914, 918 (Tenn. 1963). "[C]ourts must 'presume that the legislature says in a statute what it means and means in a statute what it says there.'" *Gleaves*, 15 S.W.3d at 803 (quoting *BellSouth Telecomms., Inc. v. Greer*, 972 S.W.2d 663, 673 (Tenn. Ct. App. 1997)).

## IV. DISCUSSION

### A.

Tennessee imposes a one-year statute of limitations upon claims made by the Bureau against an estate. *See* Tenn. Code Ann. § 30-2-310 (barring non-tax claims not filed within 12 months from the date of death of the decedent). The heirs assert that the Bureau's claim was untimely because it was filed more than one year after Decedent's death. The Bureau responds that the applicable statute of limitations does not bar its claim because it did not receive the required notice pursuant to Tennessee Code Annotated section 71-5-116(d). Both parties argue that their position is supported by the Supreme Court's decision reached in *Tanner* and by the 2007 amendments to section 71-5-116.

Notably, *Tanner* was limited to the pre-2007 version of section 71-5-116, which did not include the specific notice requirements mentioned by the Bureau. In *Tanner*, the court relied on the pre-2007 version of the statute, which provided, in pertinent part,

(c) There shall be no adjustment or recovery of any payment for medical assistance correctly paid on behalf of any individual under this part, except in the case of an individual who was fifty-five (55) years of age or older when such individual received such medical assistance or services, from such individual's estate, and then only after the death of such individual's surviving spouse, if any[.]

(1) To facilitate and enhance compliance with this subsection (c), the department of health shall promptly notify [the Bureau], in a format to be specified by the [B]ureau, of the death of any individual fifty-five (55) years of age or older. Such notification shall include the decedent's name, date of birth, and social security number. It is the legislative intent of this subsection (c) that [the Bureau] strive vigorously to recoup any TennCare funds expended for a decedent after the date of death.

(2) Before any probate estate may be closed pursuant to title 30, with respect to a decedent who, at the time of death, was enrolled in the TennCare program, the personal representative of the estate shall file with the clerk of the court exercising probate jurisdiction a release from [the Bureau] evidencing payment of all medical assistance benefits, premiums, or other such costs due from the estate under law, unless waived by the [B]ureau.

Using that version of the statute, the Supreme Court held,

Section 30-2-310(b) creates a general one-year statute of limitations on state claims against an estate, except claims for taxes. Section 71-5-116(c) however, imposes a duty on the representative of an estate to actively seek a release or waiver of any "medical assistance correctly paid," 42 U.S.C. § 1396(p), owed under the TennCare program. Because Mr. Tanner did not do so, and no waiver or release has issued, the Bureau was empowered under the terms of the applicable statute, as then written, to file the claim beyond the one-year period of limitation. At least until the first day of January, 2007, when the most recent amendment took effect, claims by the Bureau were not subject to a one-year statute of limitations, regardless of whether it received a notice to creditors.

*Tanner*, 295 S.W.3d at 630. In contrast, the amended statute provides, in pertinent part,

(c)(1) There shall be no adjustment or recovery of any payment for medical assistance correctly paid on behalf of any recipient pursuant to this part from the recipient's estate, except in the case of a recipient who was fifty-five (55) years of age or older at the time the recipient received medical assistance or services pursuant to this part. In that case, adjustment or recovery from the recipient's estate may be pursued only after the death of the individual's surviving spouse[.]

(c)(2) Before any probate estate may be closed pursuant to title 30, with respect to a decedent, who at the time of death, was enrolled in the TennCare program, the personal representative of the estate shall file with the clerk of the court exercising probate jurisdiction a release from [the Bureau] evidencing either:

> (A) Payment of all medical assistance benefits, premiums, or other costs due from the estate under law;
>
> (B) Waiver of the bureau's claims; or
>
> (C) A statement from the bureau that no amount is due.

(d)(1) To facilitate and enhance compliance with subsection (c), the following notices shall be provided:

> (A) Within thirty (30) days of receipt of notice of a person's death, the department of health shall notify [the Bureau], in a

-5-

format to be specified by the [B]ureau, of the death of any individual fifty-five (55) years of age or older. Each notification shall include the decedent's name, date of birth and social security number;

(B) Within sixty (60) days of the date of issuance of either letters of administration or letters testamentary, the personal representatives of decedents shall provide notice of the death of any individual age fifty-five (55) years of age or older to [the Bureau], in a format to be specified by the [B]ureau, shall state whether the decedent was a TennCare recipient and shall request a release from [the Bureau] pursuant to subdivision (c)(2), and an affidavit confirming notice shall be filed pursuant to § 30-2-301(b)(3);

(C) Personal representatives of decedents shall provide notice to the court concerning whether or not decedent was a TennCare recipient pursuant to § 30-1-117; and

(D) Personal representatives of decedents shall provide notice to creditors specified in § 30-2-306 to [the Bureau], if the decedent was a TennCare recipient. If a notice to creditors is provided to the [B]ureau, the [B]ureau shall file a claim for recovery in accordance with the requirements of title 30, chapter 2, part 3.

(2) It is the legislative intent of subdivision (d)(1) that, after the date of death, [the Bureau] strive vigorously to recoup any TennCare funds expended for decedent during decedent's lifetime.

Tenn. Code Ann. § 71-5-116(c), (d).

The heirs assert that the legislature amended section 71-5-116(d) because it was concerned that the Bureau had been allowed to "circumvent" the limitations period. *Tanner*, 295 S.W.3d at 628. They argue that the addition of the notice requirements placed a "burden on the various departments of the State to coordinate and ensure that the Bureau expeditiously fulfills its recoupment efforts." They caution that allowing recovery in this case "would remove any incentive for the Bureau to proceed expeditiously to administer estates or file claims" and would provide the Bureau with a luxury that other creditors had not been afforded. The Bureau opines that the language relied upon in *Tanner* was

-6-

unchanged by the amendment. The Bureau asserts that applying the statute in the way the heirs suggest would result in a significant loss of funds and would be contrary to the legislative intent when the fiscal impact of the bill was meant to be "minimal."

A similar issue was presented before this court in the case of *In re Estate of Gregory*, No. E2011-01369-COA-R3-CV, 2012 WL 2499502 (Tenn. Ct. App. June 29, 2012). In *Gregory*, the executor of decedent's estate waited approximately 14 months to open decedent's estate and provide notice to the Bureau. The executor asserted that the Bureau's claim was untimely because it had not been filed within the applicable one-year statute of limitations. Like the heirs in this case, the executor in *Gregory* argued that the legislative changes to section 71-5-116 "placed the ultimate burden on the Bureau to recoup any funds expended on TennCare recipients, regardless of actions taken or not taken by the personal representatives." 2012 WL 2499502, at *2. In rejecting that argument, this court stated,

> The effect of giving the statute of limitations effect without notice from the personal representative within one year of the death would be to reward the estate for failing to give the intended notice in a manner that would facilitate the filing of a claim, while penalizing the Bureau for failing to act despite the lack of notice. We understand that the Bureau is supposed to receive notice of the death from the department of health pursuant to [Tennessee Code Annotated section 71-5-116(d)(1)(A), but that was also true in *Tanner*. (*See Tanner*, 295 S.W.3d at 615 (quoting same requirement in version of statute in effect before January 1, 2007).

*Id.* at *3. This court further stated that "the legislature knew [section 71-5-116(c)(2)] was being read to imply an exception to the statute of limitations and left it intact" because it had met more than once after the decision in *Tanner* was filed. *Id.* The court acknowledged that "subsection (d)(1) of Tennessee Code Annotated section 71-5-116, upon part of which the executor relies, states that its purpose is to 'facilitate and enhance compliance with subsection (c)' – the 'waiver and release' requirement upon which the *Tanner* holding rests." *Id.* In conclusion, this court stated,

> [W]e hold that, under the undisputed facts of this case, the January 2007 amendment to [Tennessee Code Annotated section 71-5-116] does not change the applicability of *Tanner*. The executor, having waited more than one year from the death of Ms. Gregory to open the estate and give notice of the death, cannot now invoke the notice and claim requirements of section 71-5-116(d)(1)(D) as a reason for strictly holding the Bureau to the statute of limitations. *The executor's failure to obtain a waiver or release from the Bureau prevented the statute of limitations found in Tennessee Code Annotated*

-7-

*section 30-2-310 from running.* We state no opinion as to the result had the executor filed the estate shortly after the death and given notice to the Bureau in time to facilitate it filing a claim within a year of the death.

*Id.* at *4 (emphasis added).

The analysis in *Gregory* is sound and instructive even though the facts in this case are slightly different. In this case, the decedent's heirs never sought to open the estate. Instead, the Bureau initiated a probate proceeding, like the proceeding that was instituted in *Tanner*, pursuant to section 30-1-106. Once that proceeding was instituted, the estate could not be closed until the personal representative of the estate filed a release pursuant to section 71-5-116(c)(2). The failure of the personal representative of the estate to obtain a release prevented the statute of limitations from running. *Gregory*, 2012 WL 2499502 at *4. Additionally, the heirs neglected to give any notice to the Bureau of Decedent's death and his status as a TennCare recipient. As stated in *Gregory*, those who fail to give notice should not be able to assert the notice and claim requirements contained in section 71-5-116. *Id.* Accordingly, the statute of limitations did not prevent the Bureau from filing its claim.

In a somewhat related argument, the heirs contend that they had no duty to seek a release from the Bureau when the estate was insolvent. We reject this argument. The duty to seek a release is not contingent upon the Bureau's potential for success in recouping funds when the Bureau may choose to waive its potential claim. *See* Tenn. Code Ann. § 71-5-116(c)(2)(B). Additionally, as will be discussed further in the next issue, property not necessarily held in the estate may be used to satisfy claims submitted by a decedent's creditors, including the Bureau. *See generally* Tenn. Code Ann. § 35-15-505(a)(5).

B.

The heirs assert that the Bureau's right of recovery was limited to assets that were contained in the estate and that use of the property held in the revocable trust was error because that property was not part of the estate. The heirs admit that Tennessee allows creditors to recover property from a revocable trust if the estate does not contain sufficient assets to fulfill the debt obligations but asserts that the Bureau has "been statutorily limited to recovery against only the estate." The Bureau responds that

where the legislature, by statute, has placed certain assets of a decedent within the jurisdiction of a probate or chancery court and made them subject to distribution with the approval of the chancellor or probate judge, those assets have effectively been rendered part of the probate estate, at least for the limited purpose of selling real estate to satisfy the decedent's just debts.

-8-

The Bureau notes that while a decedent's real property is said to vest immediately upon death, the real property remains subject to distribution if the decedent's personal property is insufficient to satisfy the just debts. The Bureau analogizes that the same should hold true for property held in a revocable trust and that the Bureau should be given the same ability to recover such property as other creditors when the legislature has clearly evidenced an "intent to give the Bureau a privileged status vis-a-vis most other creditors."

The Bureau's ability to recover justly paid medical assistance from an estate is derived from section 71-5-116(c)(1), which provides, in pertinent part,

> There shall be no adjustment or recovery of any payment for medical assistance correctly paid on behalf of any recipient pursuant to this part from *the recipient's estate*, except in the case of a recipient who was fifty-five (55) years of age or older at the time the recipient received medical assistance or services pursuant to this part.

(Emphasis added). While our legislature did not define the term estate, the federal counterpart of this statute provides the following definition:

> (4) For purposes of this subsection, the term "estate", with respect to a deceased individual –
>
> > (A) shall include all real and personal property and other assets included within the individual's estate, as defined for purposes of State probate law; and
> >
> > (B) may include, *at the option of the State* (and shall include, in the case of an individual to whom paragraph (1)(C)(i) applies), any other real and personal property and other assets in which the individual had any legal title or interest at the time of death (to the extent of such interest), including such assets conveyed to a survivor, heir, or assign of the deceased individual through joint tenancy, tenancy in common, survivorship, life estate, *living trust*, or other arrangement.

42 U.S.C. § 1396p(b)(4) (emphasis added). The heirs argue that the legislature's failure to incorporate the federal definition of estate evidences the legislature's intent to "not allow [the Bureau] to recover payments from traditionally non-probate assets, including living and revocable trusts." We disagree.

Creditors may recover property held in a revocable trust when the assets held in the estate are inadequate. *See* Tenn. Code Ann. § 35-15-505(a)(5) ("[T]he property of a trust that was revocable immediately preceding the settlor's death is subject to claims of the settlor's creditors, costs of administration of the settlor's estate and the expenses of the settlor's funeral and disposal of remains."). When a creditor is attempting to recover from a revocable trust, the recovery is limited by the priority of payment of claims provided in section 30-2-317. *See* Tenn. Code Ann. § 35-15-505(a)(5) ("The [priority of payment of claims] from the probate estate of a decedent shall apply to a revocable trust to the extent the assets of the [] estate are inadequate and the personal representative or creditor or taxing authority of the settlor's estate has perfected its right to collect from the settlor's revocable trust."). The priority of payment of claims in Tennessee is as follows:

> (a) All claims or demands against the estate of any deceased person shall be divided into the following classifications, which shall have priority in the order shown:
>
> > (1) First: Costs of administration, including, but not limited to, premiums on the fiduciary bonds and reasonable compensation to the personal representative and the personal representative's counsel;
> >
> > (2) Second: Reasonable funeral expenses;
> >
> > (3) Third: Taxes and assessments imposed by the federal or any state government or subdivision of the federal or any state government, *including claims by the Bureau of TennCare pursuant to § 71-5-116*; and
> >
> > (4) Fourth: All other demands that may be filed as aforementioned within four (4) months after the date of notice to creditors.
>
> (b) All demands against the estate shall be paid by the personal representative *in the order in which they are classed, and no demand of one class shall be paid until the claims of all prior classes are satisfied or provided for*; and if there are not sufficient assets to pay the whole of any one class, the claims in that class shall be paid pro rata.

Tenn. Code Ann. § 30-2-317(a), (b) (emphasis added). If we were to hold that unlike other creditors, the Bureau may not recover from a revocable trust when the estate is insufficient

to satisfy the just debts, then other creditors would be given priority over the Bureau. We do not believe that the legislature intended to give other creditors priority over the Bureau when we are "inclined to presume that the General Assembly meant to provide a robust and effective mechanism to both recoup [the Bureau's] expenses and fulfill its obligations to the federal government." *Tanner*, 295 S.W.3d at 627.

The Supreme Court was presented with a similar issue in *In re Estate of Trigg*, 368 S.W.3d 483 (Tenn. 2012). In *Trigg*, the decedent had prepared a will that provided for the distribution of her real property. A personal representative was appointed over her estate, and the Bureau filed a claim against the estate. However, the decedent's personal property was insufficient to satisfy the Bureau's claim. The estate filed an exception to the claim, which was overruled by the probate court. On appeal to the circuit court,[2] the court held that "the real property was not part of [the decedent's] estate because it passed under her will to her beneficiaries at the time of her death." *Trigg*, 368 S.W.3d at 488. On appeal to the Supreme Court, the personal representative argued that the Bureau could not reach the decedent's property because the legislature had not enacted the expanded definition of estate. In holding that the decedent's estate included the real property that had immediately passed to the heirs at decedent's death, the Court stated,

> In light of the broad and common understanding of the word "estate," we have determined that "estate," for the purpose of 42 U.S.C. § 1396p and Tenn. Code Ann. § 71-5-116, includes not only the personal property owned by a TennCare recipient at the time of death, but also the recipient's interests in real property that are properly subject to the payment of the deceased recipient's debts should the recipient's personal property be insufficient to pay these debts, including the debt to TennCare. Any real property that can be reached by the personal representative pursuant to Tenn. Code Ann. §§ 30-2-401 and 31-2-103 for the payment of the debts of an insolvent estate may be reached by the probate court for the purpose of reimbursing TennCare for the properly paid medical care provided to a deceased recipient in accordance with Tenn. Code Ann. § 71-5-116.

*Id.* at 502. We believe the same holds true in this case, namely that any property that can be reached by the personal representative pursuant to Tennessee Code Annotated section 35-15-505 for the payment of the debts of an insolvent estate may be reached by the probate court for the purpose of reimbursing the Bureau. Accordingly, we conclude that the property held in the revocable trust was subject to the Bureau's claim for reimbursement.

---

[2]On appeal, the Supreme Court held that the circuit court lacked jurisdiction to consider the appeal.

C.

The heirs assert that allowing recovery in this case would place an unintended and illegal obligation on trustees of revocable trusts. The heirs acknowledge that creditors may reach assets held within a revocable trust but assert that unlike claims submitted by the Bureau, claims submitted by other creditors are limited to the one-year statute of limitations, thereby ensuring that any "cloud on the title" to property held in the trust is removed at a date certain. The heirs claim that it would be impossible for trustees to convey good title to property held in the trust without obtaining a release from the Bureau. The heirs opine that if the trustee were to petition for a release, the trustee would then be a direct contributor to the loss of the property, thereby violating his or her responsibilities to control and protect the property, while taking reasonable steps to enforce claims of the trust and defend claims against the trust. *See* Tenn. Code Ann. § 35-15-809, -811(a).

Tennessee Code Annotated section 35-15-505 places trustees on notice that property held in the trust could be subject to potential creditor's claims. We decline to hold that the Bureau cannot recover in this case because the property remains subject to the Bureau's claims beyond the statute of limitations *when* the proper release has not been obtained and the Bureau has not been notified of the death. In order to ensure that the property is conveyed with good title, the trustee need only keep the beneficiaries of the trust "reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests." *See* Tenn. Code Ann. § 35-15-803(a)(1). The beneficiaries may then seek to open the decedent's estate when there is a question as to whether a future claim may be filed by the Bureau. The trustee is not tasked with the responsibility to seek and obtain a release from the Bureau, that responsibility lies with the personal representative of the estate. If the personal representative complies with the notice requirements, then the claim should be filed within the applicable statute of limitations. This issue is without merit.

## V.  CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellants, Karen A. Scott, Mary Jo White, Judy Wright, David Stidham, Suzanne E. Brooks, Rebecca Ball, and Terri Lane.

_____
JOHN W. McCLARTY, JUDGE

-12-