FILED

10/15/2020

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 4, 2020 Session

## IN RE JOHN B.

**Appeal from the Juvenile Court for Macon County**
**No. 2012-JV-10      Ken Witcher, Judge**

_____

### No. M2019-02022-COA-R3-JV

_____

Father appeals the trial court's decision to reduce his parenting time significantly. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which KENNY ARMSTRONG, and CARMA DENNIS MCGEE, JJ., joined.

Bert W. McCarter, II, Murfreesboro, Tennessee, for the appellant, Scott H.B.

Lisa C. Cothron, Lafayette, Tennessee, for the appellee, Nedra D.P.

### OPINION

#### BACKGROUND

A parenting plan ("the initial order") was entered by the trial court in January 2013 giving Petitioner/Appellee Nedra D.P. ("Mother") "sole" custody of the child and awarding Respondent/Appellant Scott H.B. ("Father") 116 days of parenting time per year.[1] A prior appeal affirmed this parenting plan, including the findings that Father had engaged in conduct, including emotional abuse toward women, that was detrimental to the child. *See In re John H.B.*, No. M2013-00496-COA-R3-JV, 2014 WL 1572715 (Tenn. Ct. App. Apr. 17, 2014) (hereinafter, "***John I***").[2] Father filed a petition to modify the plan in October 2016, seeking to increase his parenting time to equal time (182.5 days to each parent) and to make major decisions jointly. Father also sought for certain restrictions on his exercise

---

[1] In cases involving custody of children in juvenile court, it is this Court's policy to remove the full names of children and other parties to protect their identities.

[2] ***John I*** was designated as a memorandum opinion under Rule 10 of the Rules of the Court of Appeals of Tennessee. Under that rule, the opinion may not be cited except in related cases.

of parental authority to be removed. Mother answered in opposition and sought an award of attorney's fees. Mother did not, however, seek any reduction in Father's parenting time in this pleading.

A trial was held over two days in July 2018. During opening statements, Mother's counsel announced that she was relying on Tennessee Code Annotated section 36-6-406 to restrict Father's parenting time. After questioning from the trial court at the end of the first day of trial, Mother filed a counter-petition to further limit Father's parenting time to supervised parenting or to 48-hour periods of time.

Father, his daughter, Mother, Mother's husband, Father's former girlfriend, and maternal grandparents testified at trial. The child was seven years old at the time of trial. Father testified in support of his petition, detailing his love and affection for the child, his home environment, and his parenting of the child. In particular, Father testified because of his strong bond with the child, the current plan allowed was "not fair" and "hurts us both." Father testified that he was planning to move to a newly built home that is thirty-eight miles from the child's school, but he could get the child to school on time. Father also testified that his employment allows him some flexibility for parenting time. Father also testified that the child's needs had changed due to growing older. Father denied that he suggested that the child say inappropriate things to Mother or hit her. Father also denied that he was controlling or emotionally abusive toward women. Father admitted that he picked the child up from grandparents without permission, but denied that he did so at the child's day care. Father further testified that the majority of exchanges take place with maternal grandparents and that he has a "wonderful relationship" with them.

Father's daughter ("Daughter") also testified in favor of Father. Daughter testified that Father did not disparage Mother and even encouraged her to have a better relationship with her own mother. Maternal Grandmother admitted that Father was a good dad, took care of the child's physical needs, and that Father and the child love each other.

In contrast, Mother testified during the trial that she wanted Father's time with the child further reduced due to Father's continuing campaign of emotional abuse toward Mother that had now spilled over to the child. Mother provided detailed testimony to support her claim that Father's bad conduct was harming both herself and the child. For example, Mother testified that the child was parroting Father's language that Father should have equal time with child because it was "fair." Mother testified that after one visit the child said that Father told him Mother did not love him. Mother also testified that on more than one occasion the child informed her that Father told him to argue with Mother and hit her, as that was "God's rule." According to Mother, the child would indeed be more argumentative and refuse to follow directions after extended time with Father. After Mother took the child to see a psychologist, this behavior stopped. Mother testified about an incident where Father had extended visitation with the child and she texted Father than the child needed decongestant medication. Father responded with a bible verse about

vengeance, which Mother perceived as a threat. Father also taught the child his phone number so that the child could secretly call him during Mother's time, even though phone calls were prohibited under the prior order. Mother also testified that Father sometimes picked the child up early from daycare or the maternal grandparents without permission.

Mother admitted that she did not inform Father when she signed the child up for activities, but testified that she always gave Father notice when the activities were going to take place. Father was present at the child's baseball games and gave the child equipment against Mother's objections. Mother also admitted that her adult son had legal and drug issues, but she testified that he was not present in her life.

Mother testified that Father's former girlfriend had participated in the emotional abuse, creating a fake social media account to harass Mother. Father's former girlfriend testified that Father would "play mind games" with people in his life. She also testified that Father knew about and approved the social media antagonism toward Mother. Moreover, she claimed that Father had once pulled a gun on her and had made threatening comments in the past.

The trial court entered both a judgment and a separate order containing findings of fact and conclusions of law on August 6, 2018. Therein, the trial court found that Father had not halted his campaign of emotional abuse against Mother and that the child was now affected by Father's conduct. The trial court therefore reduced Father's parenting time to fifty-five days, limited Father to no more than forty-eight hours of consecutive parenting time, gave Mother the ability to cancel some of Father's visits unilaterally, and placed additional restrictions on Father's exercise of parental authority. The trial court later awarded Mother attorney's fees and costs totaling $21,418.98. Father thereafter appealed to this Court.

On September 17, 2019, this Court dismissed Father's appeal on the basis that Father had appealed a non-final order. *In re John B.*, No. M2018-01589-COA-R3-JV, 2019 WL 4447459 (Tenn. Ct. App. Sept. 17, 2019). Specifically, we held that there had been no order adjudicating Mother's counter-petition. *Id.* at *3. Back in the trial court, Mother filed a motion for default judgment due to Father's failure to respond to her counter-petition. In the end, however, on October 17, 2019, the trial court entered an order dismissing Mother's counter-petition on the basis that she did not properly obtain leave of court to file the petition. Father filed a second notice of appeal on November 13, 2019. The record from the prior appeal was then consolidated with this appeal.

## ISSUES PRESENTED

Father raises the following issues, which are taken from his brief:

I. Whether the trial court erred in reducing the parenting time of the Father.

- 3 -

A. The trial court erred in reducing Father's parenting time where Mother failed to properly put Father on notice that a reduction was sought.

B. The trial court misapplied Tennessee Code Annotated § 36-6-406, and failed to make sufficient findings of fact and conclusions of law on the factors in Tennessee Code Annotated § 36-6-406(d) and Tennessee Code Annotated § 36-6-106(a) factors.

C. The weight of the evidence preponderated against the judgment of the trial court.

II. Whether the trial court erred in awarding attorney's fees and costs to the Mother and whether Father should be awarded attorney's fees for the appeal.

Mother also seeks an award of attorney's fees incurred in this appeal.

## STANDARD OF REVIEW

It is well settled that, in matters of child custody, visitation, and related issues, trial courts are given broad discretion; consequently, appellate courts are reluctant to second-guess a trial court's determinations regarding these important domestic matters. *See Armbrister v. Armbrister*, 414 S.W.3d 685, 693 (Tenn. 2013); *Harwell v. Harwell*, 612 S.W.2d 182, 185 (Tenn. Ct. App. 1980). "It is not the function of appellate courts to tweak a [residential parenting schedule] in the hopes of achieving a more reasonable result than the trial court." *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001). As explained in *Richards on Tennessee Family Law*:

> Appellate courts correct errors. When no error in the trial court's ruling is evident from the record, the trial court's ruling must stand. This maxim has special significance in cases reviewed under the abuse of discretion standard. The abuse of discretion standard recognizes that the trial court is in a better position than the appellate court to make certain judgments. The abuse of discretion standard does not require a trial court to render an ideal order, even in matters involving visitation, to withstand reversal. Reversal should not result simply because the appellate court found a "better" resolution.

Janet L. Richards, *Richards on Tennessee Family Law* § 9-2 (2d ed. 2004) (quoting *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001)). "An abuse of discretion occurs when the trial court . . . appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). "A trial court abuses its discretion in establishing a residential parenting schedule 'only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record.'" *Armbrister v. Armbrister*, 414 S.W.3d 685, 693 (Tenn. 2013) (quoting

- 4 -

*Eldridge*, 42 S.W.3d at 88).

DISCUSSION

I.

Father first asserts that the trial court erred in reducing his parenting time when such a reduction was not sought in any pleading filed by Mother until the trial was underway. In particular, Father takes issue with Mother's failure to file her own proposed parenting plan as required by Tennessee Code Annotated section 36-6-405 (requiring the filing of a parenting plan). According to Father, due process requires that the trial court's reduction of his parenting time therefore be reversed. *See generally **Keisling v. Keisling***, 92 S.W.3d 374, 378 (Tenn. 2002) (holding that parent's due process rights were violated when no pleading was filed giving the parent notice that custody would be addressed at an emergency hearing). In contrast, Mother contends that it was mandatory for the trial court to consider a reduction in Father's parenting time under Tennessee Code Annotated section 36-6-406(a), or, in the alternative, that this issue was tried by consent.

It is well-settled law in Tennessee that a judgment is void where it is rendered "wholly outside of the pleadings, and no binding consent thereto is shown in the record." ***Andrews v. Fifth Third Bank***, 228 S.W.3d 102, 107 (Tenn. Ct. App. 2007) (citing ***Gentry v. Gentry***, 924 S.W.2d 678, 680 (Tenn. 1996)); *see also **Turner v. Turner***, 473 S.W.3d 257, 270 (Tenn. 2015) (quoting ***Gentry***, 924 S.W.2d 678, 680) ("'A [judgment] is absolutely void if it appears on the face of the record itself . . . that the [judgment] is wholly outside of the pleadings[.]'"). "A trial court commits error when it bases a decision, even in part, upon conclusions concerning an issue that was not raised in the pleadings or tried by consent." ***Solima v. Solima***, No. M2014-01452-COA-R3-CV, 2015 WL 4594134, at *7 (Tenn. Ct. App. July 30, 2015) (citing ***Rawlings v. John Hancock Mut. Life Ins. Co.***, 78 S.W.3d 291, 302 (Tenn. Ct. App. 2001)). Thus, "our courts have the authority to grant appropriate relief to a prevailing party even if that relief was not demanded in the pleadings if the issue was tried by consent." ***Renken v. Renken***, No. M2017-00861-COA-R3-CV, 2019 WL 719179, at *4 (Tenn. Ct. App. Feb. 20, 2019) (citing Tenn. R. Civ. P. 54.03). "When issues not raised by the pleadings are tried by consent, 'they shall be treated in all respects as if they had been raised in the pleadings.'" *Id.* (quoting Tenn. R. Civ. P. 15.02). Indeed, even the case that Father cites in support of his assertion that the trial court improperly reduced his parenting time with the child in the absence of a properly filed pleading seeking that relief recognizes an exception where the issue is tried by consent. *See **Keisling***, 92 S.W.3d at 378 (stating that "[a] judgment deciding an issue not raised in the pleadings is no longer per se invalid" because the issue may have been tried by consent). Moreover, a party's failure to file a proposed parenting plan in accordance with section 36-6-405 is not inevitably fatal to a parent's claim. *See **Renken v. Renken***, No. M2017-00861-COA-R3-CV, 2019 WL 719179, at *4 (Tenn. Ct. App. Feb. 20, 2019) ("[A] parent's failure to file a proposed parenting plan is not fatal.") (citing ***Freeman v. Freeman***, No. E2017-

- 5 -

02110-COA-R3-CV, 2018 WL 6601563, at *5 (Tenn. Ct. App. Dec. 14, 2018) (holding that failure to "attach a proposed parenting plan to a petition to modify custody . . . does not nullify the parent's attempt to invoke the trial court's jurisdiction"); *Allen v. Allen*, No. W2017-02332-COA-R3-CV, 2018 WL 4677619, at *8 (Tenn. Ct. App. Sept. 28, 2018) (concluding that failure to file a proposed parenting plan may affect the overall success of the party's claim but does not necessitate dismissal)).

Several facts lead us to conclude that this issue was indeed tried by consent. First, during opening arguments before the trial court, Mother's counsel announced that she was relying on Tennessee Code Annotated section 36-6-406 to reduce Father's parenting time due to a pattern of emotional abuse. Father's counsel did not object to Mother's counsel's statement or take issue with it in any way. Thereafter, during the first day of trial, Mother was questioned extensively by her own attorney on cross-examination regarding her desire that Father receive even less time with the child. Indeed, Mother testified that she preferred that Father have no visitation with the child but understood that such a desire was not realistic. No objection was ever lodged to this evidence by Father. Rather, the fact that Mother had not filed a pleading specifically seeking affirmative relief was raised for the first time by the trial court at the conclusion of the first hearing day. When questioned, Mother asserted that she was not required to file such a pleading as the best interest of the child was the lodestar of the inquiry. Importantly, counsel for Father agreed with this sentiment, specifically stating as follows:

> I think if you find a material change of circumstances, Judge, you can fashion a parenting plan that's in the best interest of the child or a custodial arrangement that's in the best interest of the child, whether it means to increase [Father's] time or decrease his time. That's how I believe the law states. If you find a material change, then you can do whatever you deem fit that's in the best interest of the minor child.

By the next morning, however, Mother had filed a pleading seeking a reduction in Father's time. Mother's counsel continued to assert, however, that such a pleading was unnecessary but was rather filed in an abundance of caution. Father's counsel objected strenuously to hearing Mother's petition, arguing that he was entitled to an opportunity to file an answer and engage in discovery before a hearing could be had on Mother's petition. Father's counsel declined a continuance on his own petition, however, as he wished to go forward on that petition. Thus, the hearing on Father's petition went forward, while Mother's petition was not heard.

Before any proof was heard on the second day, however, the trial court noted that neither party had introduced the court file from the initial custody determination. The trial court stated that it did not feel that introduction of the court file was necessary, as the court could take judicial notice of the file. Father's attorney stated his agreement that the court could take the prior proceedings "into consideration" but argued that no proof could be

presented as to what occurred prior to the entry of the initial order. Father's attorney further noted that res judicata was not applicable to prevent Father from seeking a change in the parenting plan due to the parties' agreement that there was a material change in circumstances. The trial court assured counsel that was "not what I'm suggesting as far as evidence. I'm talking about what is in the court file." Thereafter, counsel for Father consented to its consideration. Importantly, among the court file that the trial court was considering was the trial court's initial order of custody in which it found that Father had engaged in a campaign of abusive behavior against the women in his life and the trial court's prior finding that his interaction with the child should be limited.

The proof then resumed, with Father's counsel redirecting Mother. Despite the fact that the parties were proceeding solely on Father's petition, the very first thing that Father's counsel asked Mother was about her request that Father's time with the child be reduced. In fact, this issue was covered extensively during redirect by Father's counsel. At the conclusion of the hearing, the trial court took the matter under advisement and ultimately entered a written order finding that there was a material change in circumstances and that it was now in the child's best interest for Father's parenting time to be reduced. Following the dismissal of an appeal of that order, the trial court entered a written order specifically dismissing Mother's counter-petition, as being improperly filed. This appeal followed, in which Father now asserts that the trial court was wrong to reduce his parenting time without a timely filed pleading specifically raising section 36-6-406.

We concede that it is unusual that the trial court both granted Mother's request for a reduction in Father's parenting time and dismissed her counter-petition actually seeking that relief. Still, Mother testified extensively at trial that she was seeking a reduction in parenting time due to Father's abusive tendencies and her belief that Father was improperly influencing the child to engage in similar behavior. Father did not object to this evidence, but sometimes even elicited it. Under similar circumstances, we have held that a parenting time issue was tried by consent. *See* **Renken**, 2019 WL 719179, at *4 ("Mother testified, without objection, that the current plan should be modified even if she was not allowed to move. She explained that an increase in her parenting time would make it easier to transport the children to their extracurricular activities. The guardian ad litem recommended equal parenting time. And Father expressed his view that Mother was not entitled to increased parenting time."). The facts in this case even more strongly support a finding that this issue was tried by consent: in addition to Mother's extensive testimony, the parties consented to the trial court's consideration of the prior court file that documented Father's abuse, and Father's counsel specifically conceded that the trial court was at liberty to decrease his parenting time even without a specific pleading filed by Mother. Under these circumstances, we conclude that Mother's request for a reduction of Father's parenting time due to Father's alleged abuse was tried by consent.[3]

---

[3] We therefore do not address Mother's argument that the language of Tennessee Code Annotated sections 36-6-405 and -406 make consideration of their factors mandatory regardless of whether a pleading

- 7 -

# II.

Father next argues that the trial court misapplied Tennessee Code Annotated section 36-6-406 and failed to make sufficient findings of fact under that section and Tennessee Code Annotated section 36-6-106(a). A brief overview of the framework for parenting time and child custody decisions is therefore useful. Pursuant to section 36-6-106(a), cases involving the custody of a child are to be determined "on the basis of the best interest of the child."[4] The statute therefore lists fifteen non-exclusive factors that should be considered in determining the child best interests;[5] consistent with these factors and the

---

was filed seeking relief thereunder.

[4] Of course, when a parent is seeking to modify an existing parenting arrangement, the parent must show a material change in circumstances before the best interest analysis is triggered. *See* Tenn. Code Ann. § 36-6-101 (a)(2)(C) (requiring a material change in circumstances affecting the child's best interest to modify a parenting schedule). There is no dispute in this case that the trial court properly found a material change in circumstances so as to reevaluate the parenting plan.

[5] These factors are

> (1) The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;
>
> (2) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order;
>
> (3) Refusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings;
>
> (4) The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;
>
> (5) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;
>
> (6) The love, affection, and emotional ties existing between each parent and the child;
>
> (7) The emotional needs and developmental level of the child;
>
> (8) The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. The court may order an examination of a party under Rule 35 of the Tennessee Rules of Civil Procedure and, if necessary for the conduct of the proceedings, order the disclosure of confidential mental health information of a party under § 33-3-105(3). The court order required by § 33-3-105(3) must contain a qualified protective order that limits the dissemination of confidential protected mental health information to the purpose of the litigation pending before the court and provides for the return or destruction of the confidential protected mental health information at the conclusion of the proceedings;
>
> (9) The child's interaction and interrelationships with siblings, other relatives and

best interest of the child, "the court shall order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child[.]" In the same vein, section 36-6-404 provides that the trial court should enter a permanent parenting plan that provides for the child's residential schedule. In determining the child's schedule, the statute provides that the court shall consider the factors contained in section 36-6-106(a), unless "the limitations of [section] 36-6-406 are [] dispositive of the child's residential schedule[.]"

Section 36-6-406 in turn provides that:

A parent's residential time as provided in the permanent parenting plan or temporary parenting plan **shall** be limited if the limitation is found to be in the best interest of the minor child and if the court determines, based upon a prior order or other reliable evidence, that a parent has engaged in any of the following conduct:

(1) Willful abandonment that continues for an extended period of time or substantial refusal to perform parenting responsibilities; or
(2) Physical or sexual abuse or a pattern of emotional abuse of the parent, child or of another person living with that child as defined in § 36-3-601.

Tenn. Code Ann. § 36-6-406(a) (emphasis added).

Father concedes that the trial court found by virtue of its initial order and the order appealed that he had engaged in a pattern of mental and emotional abuse against Mother and the child. He asserts, however, that such finding is insufficient to qualify under section 36-6-406(a)(2) because there was no physical component to this abuse. In support, Father

---

step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;
(10) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;
(11) Evidence of physical or emotional abuse to the child, to the other parent or to any other person. The court shall, where appropriate, refer any issues of abuse to juvenile court for further proceedings;
(12) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;
(13) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;
(14) Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and
(15) Any other factors deemed relevant by the court.

Tenn. Code Ann. § 36-6-106(a).

points to the plain language of subsection (a)(2), which defines the abuse considered therein pursuant to section 36-3-601. Section 36-3-601(1), however, defines abuse in solely physical terms, as "inflicting, or attempting to inflict, physical injury on an adult or minor by other than accidental means, placing an adult or minor in fear of physical harm, physical restraint, [or] malicious damage to the personal property of the abused party[.]" Tenn. Code Ann. § 36-3-601(1) (also involving physical abuse to an animal).

This issue involves statutory construction. Statutory interpretation is a question of law, and we review it de novo without a presumption of correctness. *Gleaves v. Checker Cab Transit Corp., Inc.*, 15 S.W.3d 799, 802 (Tenn. 2000); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998). In interpreting a statute, we must give effect to the legislature's intent. *Myint*, 970 S.W.2d at 924. The legislative intent and purpose are to be ascertained primarily from the natural and ordinary meaning of the statutory language, without a forced or subtle interpretation that would limit or extend the statute's application. *Id.* However, "[i]t is presumed that the legislature enacting a statute did not intend an absurdity, and such a result will be avoided by this court if the terms of the statute admit of it by reasonable construction." *Epstein v. State*, 211 Tenn. 633, 366 S.W.2d 914 (Tenn. 1963); *Loftin v. Langsdon*, 813 S.W.2d 475, 480 (Tenn. Ct. App.1991). But "[i]f the words of a statute plainly mean one thing they cannot be given another meaning by judicial construction." *Henry v. White*, 194 Tenn. 192, 198, 250 S.W.2d 70, 72 (Tenn. 1952).

In this case, the plain language of section 36-6-406(a)(2) indicates that the Tennessee General Assembly intended that a pattern of emotional abuse would be sufficient to support a limitation on visitation thereunder. While the Legislature did somewhat inartfully append the definitions contained in section 36-3-601 to its enactment, we cannot conclude that this addition negates the plain language that purely emotional abuse will be sufficient under the statute so long as it is part of a pattern. To hold otherwise would be to render the word "emotional" in section 36-6-406 meaningless and lead to an absurd result at odds with the clear intention of the statute as derived from its plain language. *See Friedmann v. Corr. Corp. of Am.*, 310 S.W.3d 366, 377 (Tenn. Ct. App. 2009) (quoting *In re Estate of Nelson*, No. W2006-00030-COA-R3-CV, 2007 WL 851265, at *10 (Tenn. Ct. App. Mar. 22, 2007) (citing *Eastman Chem. Co.*, 151 S.W.3d 503, 507 (Tenn. 2004))) ("[W]e endeavor to effectuate the intent of the legislature by avoiding an interpretation that would render the statute's language meaningless, redundant, or superfluous.").We therefore conclude that a pattern of emotional abuse without any physical component is sufficient to impose limitations under section 36-6-406(a).

In any event, section 36-6-406 contains additional language that gives the trial court discretion to limit parenting time under other circumstances:

> (d) A parent's involvement or conduct may have an adverse effect on the child's best interest, and the court may preclude or limit any provisions of a parenting plan, if any of the following limiting factors are found to exist after

- 10 -

a hearing:

(1) A parent's neglect or substantial nonperformance of parenting responsibilities;
(2) An emotional or physical impairment that interferes with the parent's performance of parenting responsibilities as defined in § 36-6-402;
(3) An impairment resulting from drug, alcohol, or other substance abuse that interferes with the performance of parenting responsibilities;
(4) The absence or substantial impairment of emotional ties between the parent and the child;
(5) The abusive use of conflict by the parent that creates the danger of damage to the child's psychological development;
(6) A parent has withheld from the other parent access to the child for a protracted period without good cause;
(7) A parent's criminal convictions as they relate to such parent's ability to parent or to the welfare of the child; or
(8) Such other factors or conduct as the court expressly finds adverse to the best interests of the child.

The factors contained in section 36-6-406(d) are non-exclusive. *See* Tenn. Code Ann. § 36-6-406(d)(8). The trial court's findings regarding Father's extensive pattern of emotional abuse is of the same nature as the other types of concerns specifically addressed by section 36-6-406. Parenting a child involves not only providing for physical needs but also facilitating a relationship with the other parent. *Cf.* Tenn. Code Ann. § 36-6-106(a)(2) (noting that this is a factor that affects the best interest of the child). Although we will not speculate as to the cause, the proof clearly shows that for whatever reason, Father is emotionally unable to set his issues aside to facilitate the child's relationship with Mother. *See* Tenn. Code Ann. § 36-6-406(d)(2). And Father has used conflict between himself and Mother in a way that harms the child. *See* Tenn. Code Ann. § 36-6-406(d)(5). Under these circumstances, the trial court did not err in finding that considerations under section 36-6-406 warrant a limitation on his parenting time.

Father next contends that the trial court did not make sufficient findings under sections 36-6-406 and 36-6-106(a) to support the limitation on his visitation. Under Rule 52.01 of the Tennessee Rules of Civil Procedure, trial courts are required to make findings of fact and conclusions of law in bench trials.[6] No bright-line test exists to determine whether factual findings are sufficient, but the findings of fact must include as many facts as necessary to express how the trial court reached its ultimate conclusion on each factual

---

[6] Although this case was filed in juvenile court, Rule 101 of the Tennessee Rules of Juvenile Practice and Procedure provides that the Tennessee Rules of Civil Procedure apply to child custody proceedings under Tennessee Code Annotated sections "36-6-101 et seq., 36-6-201 et seq., and 37-1-104(a)(2) and (e)."

issue. ***Lovlace v. Copley***, 418 S.W.3d 1, 35 (Tenn. 2013) (citing 9C Charles A. Wright et al., *Federal Practice and Procedure* § 2571, at 328 (3d ed. 2005)). Thus, the law generally reflects that trial courts are not required to articulate every factor and its application to the facts at issue. ***Murray v. Murray***, No. M2009-01576-COA-R3-CV, 2010 WL 3852218, at *8 (Tenn. Ct. App. Sept. 28, 2010); ***Brady v. Gugler***, No. M2006-01993-COA-R3-CV, 2008 WL 836089, at *4 (Tenn. Ct. App. Mar. 27, 2008). However, "[w]ithout such findings and conclusions, this court is left to wonder on what basis the [trial] court reached its ultimate decision." ***In re M.E.W.***, No. M2003-01739-COA-R3-PT, 2004 WL 865840, at *19 (Tenn. Ct. App. April 21, 2004). When the trial court's order is deficient, remand is often required. *See, e.g.*, ***Lovlace***, 418 S.W.3d at 34–35; ***Sisco v. Howard***, No. M2015-01928-COA-R3-CV, 2016 WL 7190899, at *4 (Tenn. Ct. App. Dec. 12, 2016). *But see* ***In re Elaina M.***, No. M2010-01880-COA-R3-JV, 2011 WL 5071901, at *8 (Tenn. Ct. App. Oct. 25, 2011) (deciding the case in spite of the trial court's failure to enter a sufficient order due to issues of judicial economy).

According to Father, the trial court only made broad, sweeping statements about the evidence and its application to the statute. Father asserts that this was deficient. Respectfully, we disagree. The trial court's written findings of fact and conclusions of law, which were expressly incorporated into its final order, specifically state that the court had previously found that "Father had engaged in inflicting emotional abuse on numerous family members over the years[.]" As previously discussed, Father eventually acquiesced in the trial court's consideration of the prior order. And section 36-6-406 makes clear that findings in "a prior order" can be considered in limiting a party's parenting time with a child. Tenn. Code Ann. § 36-6-406(a) & (d) (providing for limitations on visitation if the trial court determines that the parent has engaged in the enumerated conduct either based on reliable evidence or "a prior order"). The trial court further found that after the entry of the initial order, Father continued "in his efforts to inflict emotional abuse on Mother" and that Father "is still inflicting emotional abuse on family members, now including the [] [c]hild." The trial court also specifically found that a material change in circumstances occurred based on the agreement of the parties, as well as proof that due to the child's increased age, he was "much more susceptible to be influenced by the very bad things that Father has been telling [c]hild."

We concede that the trial court did not make detailed findings as to each factor contained in section 36-6-106(a). The trial court's order, however, indicates that the trial court did consider these factors and some specific findings were made relative to the factors. For example, the trial court found that Father had not shown that he was willing and able to facilitate a relationship between the child and Mother, but in fact has tried to harm the child's relationship with Mother. *See* Tenn. Code Ann. § 36-6-106(a)(2) (directing the court to consider "the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents"). The trial court further found that Father was "committing mental abuse" on the child in an effort to abuse Mother, which is relevant

to a number of factors. *See* Tenn. Code Ann. § 36-6-106(a)(7) (directing the court to consider "[t]he emotional needs and developmental level of the child"), (8) (directing the court to consider "[t]he moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child"), (11) (directing the court to consider emotional abuse of the child or the child's parent). In any event, section 36-6-406(a) indicates that the considerations thereunder may be entirely dispositive of the child's residential schedule without consideration of the factors contained in section 36-6-106(a). And the trial court made detailed, specific findings concerning various instances of emotional abuse that Father directed first at Mother and then at the child. Thus, we cannot conclude that the trial court's order is insufficient to afford appropriate appellate review or that it does not contain sufficient findings to support the limitation on Father's parenting time.

Father also argues that the trial court's findings are against the weight of the evidence, as the trial court was biased against Father based on the prior proceedings and that the trial court's "consideration of the prior order only served as to unfairly taint [Father] in the view of the [t]rial [c]ourt, establishing a bias against him[.]" Again, we note that Father acquiesced when the trial court stated that it would take judicial notice of the prior court filings in ruling on the instant matter. And as discussed above, section 36-6-406 specifically contemplates that prior orders may be considered in determining whether limitations on parenting time are warranted. Moreover, the record indicates that Father filed no motion for recusal of the trial court. *See generally* Tenn. Sup. Ct. R. 10B (requiring a written motion for recusal); **Brooks v. Rivertown on Island Homeowner Ass'n, Inc.**, No. W2011-00326-COA-R3-CV, 2011 WL 6034781, at *2 (Tenn. Ct. App. Dec. 6, 2011) (citing **Eldridge v. Eldridge**, 137 S.W.3d 1, 8 (Tenn. Ct. App. 2002)) ("The failure to file a motion for recusal results in a waiver of the issues.").

In any event, we conclude that the record does not demonstrate bias of the kind that necessitates a new trial. As we have previously explained:

> The terms "bias" and "prejudice" generally refer to a state of mind or attitude that works to predispose a judge for or against a party; however, "[n]ot every bias, partiality, or prejudice merits recusal." **Alley** [**v. State**], 882 S.W.2d [810,] 821 [(Tenn. Crim. App. 1994)]. To merit disqualification of a trial judge, "prejudice must be of a personal character, directed at the litigant, 'must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from . . . participation in the case.'" **Id.** (quoting **State ex rel. Wesolich v. Goeke**, 794 S.W.2d 692, 697 (Mo. App. 1990)).
> However, "[i]f the bias is based upon actual observance of witnesses and evidence given during the trial, the judge's prejudice does not disqualify the judge." **Id.** It is for this reason that "[a] trial judge's adverse rulings are not usually sufficient to establish bias." [**State v.**] **Cannon**, 254 S.W.3d [287,] 308 [(Tenn. 2008)]. "Rulings of a trial judge, even if erroneous,

numerous and continuous, do not, without more, justify disqualification." *Id.* (quoting *Alley*, 882 S.W.2d at 821).

*Boren v. Hill Boren, PC*, 557 S.W.3d 542, 548–49 (Tenn. Ct. App. 2017). Thus,

> Generally, in order to justify recusal, any alleged bias must arise from extrajudicial sources and not from events or observations during litigation of a case. If the bias is alleged to stem from events occurring in the course of the litigation of the case, the party seeking recusal has a greater burden to show bias that would require recusal, i.e., that the bias is so pervasive that it is sufficient to deny the litigant a fair trial.

*McKenzie v. McKenzie*, No. M2014-00010-COA-T10B-CV, 2014 WL 575908, at *3 (Tenn. Ct. App. Feb. 11, 2014).

Father does not argue on appeal that the trial court considered extrajudicial sources that resulted in a bias against him. *Cf.* *C.D.B. v. A.B.*, No. M2018-00532-COA-T10B-CV, 2018 WL 1976119, at *6 (Tenn. Ct. App. Apr. 26, 2018) (citing *Black's Law Dictionary* 665 (9th ed. 2009)) (defining "extrajudicial" as "'[o]utside court' or 'out-of-court'"). Nor does Father assert that there was a pervasive bias that denied him the right to a fair trial. Indeed, Father cites no legal authority in support of this specific portion of his appellate brief. Regardless, we conclude that the trial court properly considered Father's prior bad conduct to determine whether Father's conduct had improved to the point that his parenting time should be increased. Unfortunately, the proof presented demonstrated that Father had not halted his bad behavior and that he had now involved the child in his schemes. Based on this proof and the absence of legal authority to support Father's position, we conclude that Father has not demonstrated that the trial court exhibited a bias against him that undermines the trial court's decision or necessitates a new trial.

One final note with regard to this issue. Although Father couches this argument in terms of the weight of the evidence, Father expends very little effort in this portion of his brief as to the evidence presented or the trial court's findings thereon. This tactic was employed by Father in his first appeal without success. *See also* *John I*, 2014 WL 1572715, at *4 ("Father cites us to no evidence in the record that would preponderate against the trial court's findings, nor does he assert that the trial court erred in its specific findings of fact."). Father merely asserts that much of the evidence against him was disputed and that without the lens caused by the trial court's alleged bias, the evidence showed that Father has a strong bond with the child, that Father gets along well with maternal grandparents, who are typically present at the exchanges, that Father appropriately disciplines the child and engaged in activities with him, and that Father did not "direct or dictate [the] content" used by his former girlfriend to harass Mother.

But the trial court found differently. In particular, the trial court found that Father

continued to engage in abusive conduct toward Mother that had spilled over to the child, that Father has improperly involved the child in parenting disputes, that Father violated the prior order concerning phone calls, that Father bullied Mother into getting his way in some instances, that Father failed to adhere to the parenting plan by failing to pick the child up or picking the child up extremely early, and that Father engaged in conduct with his former girlfriend which was intended to cause Mother emotional harm.[7] Moreover, the trial court specifically found that Father was involved in his former girlfriend's harassment campaign against Mother.

In the absence of specific argument by Father that the trial court's factual findings were incorrect, we will not tax the length of this opinion with a detailed recitation of the findings by the trial court. However, one finding by the trial court bears mentioning with specificity. In particular, Mother testified that Father informed the child that Mother did not love him and directed the child to argue and even hit Mother "because that is God's rule." Mother testified that this advice caused the child great distress. Based on this proof, the trial court found that the child's increased age made him even more susceptible to Father's bad influence, necessitating further limitations on Father's parenting time.

Although Father denied that he directed the child to hit Mother and disputed some of her other allegations, the trial court made an express finding that where Mother's and Father's testimony differed, her testimony was more credible and to be accepted as truthful. "Because the trial judge is in the best position to assess the credibility of the witnesses, such credibility determinations are entitled to great weight on appeal." *Burden v. Burden*, 250 S.W.3d 899, 905 (Tenn. Ct. App. 2007) (citing *Massengale v. Massengale*, 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995)). Nothing in Father's brief causes us to question the trial court's credibility findings. *Cf. In re Keara J.*, 376 S.W.3d 86, 94 (Tenn. Ct. App. 2012) (noting that credibility findings "will not be disturbed absent clear and convincing evidence to the contrary"). These findings as to Father's campaign of emotional abuse and the harm that it was causing the child are detailed and specific. Moreover, these facts, along with other similar facts in the record, strongly support the trial court's finding that it was not in the child's best interest to have significant contact with Father. While there are certainly some facts in Father's favor, Father has simply not met his burden on appeal to show that the evidence preponderates against the trial court's overall determination that there should be limitations on his parenting time. In sum, Father was given a chance to improve his behavior following the initial order; rather than improve, Father continued in his campaign of emotional abuse, which now increasingly involves and affects the child due to his increased age. The trial court's decision to enter a parenting plan in which Father's time with the child was limited to fifty-five days per year is therefore affirmed.

---

[7] For example, in the trial court's prior order, it found that some conduct by Father and his girlfriend, such as public displays of affection when the child was hospitalized and girlfriend wearing a necklace to testify in court that Father had first given Mother, was intended to cause Mother emotional harm. Father's former girlfriend confirmed at the trial on the instant petition that causing Mother distress was the purpose of that conduct.

### III.

Father next asserts that the trial court erred in awarding Mother attorney's fees incurred at trial. Father also asserts that he should be awarded attorney's fees on appeal. Mother contends that the trial court was correct in awarding her attorney's fees and asserts that she is likewise entitled to fees incurred on appeal.

Attorney's fees are authorized in this case under Tennessee Code Annotated section 36-5-103. At the time that Father filed his petition to modify the parenting plan, the version of section 36-5-103 provided as follows:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

Tenn. Code Ann. § 36-5-103(c) (2016).[8] Although the statue often speaks in terms of spouses, this Court has upheld awards involving unmarried parents. *See* ***Brewster v. Galloway***, No. E2011-01455-COA-R3-CV, 2012 WL 2849428, at *12 (Tenn. Ct. App. July 11, 2012) (citing ***Miller v. Welch***, 340 S.W.3d 708, 714–15 (Tenn.Ct.App.2010)) (upholding an award of attorney fees to mother of child born out of wedlock when father appealed the court's setting of child support and attorney fee award); ***Massey v. Casals***, 315 S.W.3d 788, 799 (Tenn. Ct. App. 2009) (upholding an award of attorney fees to mother of child born out of wedlock in child support modification case)). We have further explained regarding attorney's fees under this statute:

> Although not controlling, in awarding attorney's fees pursuant to section 36-5-103(c), a trial court may consider proof of a party's inability to pay such fees and whether one party is at an economic disadvantage in comparison to the other. We have stressed, however, that the purpose of requiring a non-custodial parent to pay attorney fees is to protect the legal remedies of the child, not the parent.

***State ex rel. Groesse v. Sumner***, 582 S.W.3d 241, 268–69 (Tenn. Ct. App. 2019), *perm.*

---

[8] This subsection was amended in 2018, but the amendment only applies to actions that were commenced on or after July 1, 2018. *See* 2018 Tenn. Laws Pub. Ch. 905 (H.B. 2526), *eff.* (July 1, 2018).

*app. denied* (Tenn. June 20, 2019) (internal citations, alternations, and quotation marks omitted) (quoting ***In re Jasmine G.***, No. M2015-01125-COA-R3-JV, 2016 WL 1072847, at \*5 (Tenn. Ct. App. Mar. 16, 2016)). Other factors this court has considered are the requesting party's success in the appeal, whether the appeal was sought in good faith, and any other relevant equitable factors. ***Bowen v. Wiseman***, No. M2017-00411-COA-R3-CV, 2018 WL 6992401, at \*12 (Tenn. Ct. App. June 29, 2018). The trial court's decision to award fees under this statute is reviewed for an abuse of discretion. ***Sherrod v. Wix***, 849 S.W.2d 780, 785 (Tenn. Ct. App. 1992).

Following trial, Mother submitted an affidavit detailing attorney's fees and expenses of $21,418.98. Father was expressly permitted additional time to respond to Mother's affidavit, but chose to file nothing contesting the fees. The trial court thereafter awarded Mother the totality of her requested fees. Father argues on appeal, however, that the trial court did not perform sufficient analysis to determine the reasonableness of the fee, particularly given the parties' substantially similar incomes. Father had an opportunity to contest the reasonableness of the fee in the trial court but failed to do so. We will therefore not entertain an argument concerning the reasonableness of the fee in this appeal. *See generally* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). Under these circumstances, the trial court did not abuse its discretion in awarding Mother attorney's fees.

We further decline both parties' requests for fees incurred in this appeal. As to Father, he was not successful in his request to obtain additional time with the child. Although Mother did prevail in this case, the matter was unnecessarily complicated by Mother's decision not to file a pleading seeking affirmative relief until the eleventh hour. Nevertheless, Mother received all of her requested attorney's fees in the trial court.[9] Under these circumstances, we exercise our discretion to deny an award of attorney's fees to either party.

## CONCLUSION

The judgment of the Macon County Juvenile Court is affirmed, and costs of this appeal are taxed to Appellant, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE

---

[9] These fees appear to include time related to certain mental health proof and a mental examination that was denied by the trial court, as well as the counter-petition that was eventually dismissed as not properly filed.

- 17 -